USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

     Plaintiff,

  -and-

MARK MILANO,

     Intervening Plaintiff,

  -against-

EMMANUEL O. ASARE, M.D., and
SPRINGFIELD MEDICAL AESTHETIC P.C.
d/b/a ADVANCED COSMETIC SURGERY OF
NEW YORK,

     Defendants.

15 Civ. 3556 (AT) (OTW)

**AMENDED OPINION
AND ORDER**[1]

ANALISA TORRES, District Judge:

  On May 6, 2015, Plaintiff, the United States of America (the "Government") brought this enforcement action under Title III of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12188(b)(1)(B)(i). *See* Compl., ECF No. 1. The Government alleges that Defendants, Emmanuel O. Asare, M.D. and his former cosmetic surgery practice Springfield Medical Aesthetic P.C. (collectively, "Defendants"), denied cosmetic surgery services to individuals with disabilities, including HIV, in violation of the ADA. On February 10, 2016, Intervenor-Plaintiff, Mark Milano, filed an intervenor complaint alleging that Defendants denied

---

[1] The Court's Opinion and Order dated December 20, 2017 (the "Original Opinion") is vacated. This Amended Opinion and Order (the "Amended Opinion") serves to correct and clarify the Original Opinion, which addressed the parties' cross-motions for summary judgment. Original Opinion, ECF No. 114. The Amended Opinion also addresses Defendants' motion for reconsideration of the Original Opinion, ECF No. 121, and the Government's motion for reconsideration of the Court's ruling on Defendants' third motion *in limine*, Gov't Letter, ECF No. 141. To the extent the Amended Opinion does not appear to address an argument, it is because the Court concluded that the argument was without merit.

him cosmetic surgery services on the basis of his HIV status in violation of the ADA and the New York City Human Rights Law ("HRL"). *See* Milano Compl., ECF No. 31. The Government and Milano move for summary judgment. ECF No. 87. Defendants cross-move for summary judgment on the Government's ADA claim premised on disabilities other than HIV. ECF No. 100. For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part, and Defendants' cross-motion is GRANTED.

## BACKGROUND

I.  Facts

In 2014, John Doe 1, John Doe 2, and Intervenor-Plaintiff, Mark Milano, went to Defendant, Emmanuel O. Asare, M.D., for cosmetic surgery services. In April 2014, John Doe 1 had an initial consultation with Asare for gynecomastia surgery. Pls. 56.1 Statement ¶ 39, ECF No. 88. The surgery was scheduled, but Asare canceled it after test results suggested that John Doe 1 might be HIV positive. *Id*. ¶ 41. The parties dispute what, exactly, John Doe 1 and Asare discussed after cancellation or if a follow-up meeting took place. *Id.* ¶¶ 41–42. But, the procedure did not go forward.

Similarly, in May 2014, John Doe 2 sought gynecomastia surgery with Asare. *Id*. ¶ 28. John Doe 2 had an initial consultation, attended a pre-operative office visit, paid a deposit for the surgery, and, on May 21, 2014, appeared at Asare's office for the procedure. *Id.* ¶¶ 28–29. John Doe 2 was administered a sedative cocktail, including lorazepam, hydromorphone, and Benadryl. *Id*. ¶ 30. Before beginning the surgery, however, Asare canceled the procedure. *Id*. ¶ 31. Asare's notes from May 21 indicate that John Doe 2 had an elevated white blood count and tested positive for HIV. May 21 Notes, ECF No. 93-5. Asare scratched out the "operative report," noting the procedure was "cancelled due to lab results." *Id.*

2

Instead of rescheduling the surgery, Asare's May 21 notes indicate that he developed a "plan" whereby John Doe 2 would consult his primary care physician and repeat the HIV test in eight weeks. *Id.* The notes state that "(if [the re-test is negative]) [Asare] will re-schedule [the] procedure." *Id*. Two days later, John Doe 2 came in for another appointment. Asare's May 23 notes state that he gave John Doe 2 a "[d]etailed explanation concerning his [elevated white blood count] and inconclusive HIV test." *Id*. The notes state that John Doe 2 agreed to meet with his primary care physician as well as other specialists. *Id.*

The parties agree that John Doe 2 did not, in fact, have HIV. Pls. 56.1 Statement ¶¶ 31, 34. The Government maintains that John Doe 2 knew he did not have HIV and informed Asare of that fact, but that Asare insisted that John Doe 2 was HIV-positive and that Asare would, therefore, not perform the procedure. *Id*. ¶¶ 31, 35. Defendants maintain that Asare would have operated on John Doe 2 after he obtained medical clearance, but that John Doe 2 decided to cancel the surgery. *Id.* ¶ 38.

Finally, in July 2014, Milano requested that Asare perform a gynecomastia procedure on him. *Id.* ¶ 14. At his initial consultation, Milano mentioned HIV medications he had taken in the past. *Id*. ¶ 16. Asare asked Milano if he had HIV, and Milano confirmed that he did. *Id.* ¶ 17. It is disputed what, exactly, Asare told Milano after this point, but the parties agree that Asare conveyed to Milano that he was not a suitable candidate for the gynecomastia surgery. *Id.* ¶ 18. Asare declined to perform the procedure. *Id.* ¶¶ 18–20.

II. Procedural History

On July 15, 2014, Milano filed a complaint about Asare with the Department of Justice. *See* Compl. ¶ 29; Milano Compl. ¶ 39. As a result, the Government launched an investigation into Asare and Advanced Cosmetic. Compl. ¶ 30. By letter dated September 19, 2014, the

Government requested that Defendants provide documents and information about its medical services to individuals living with HIV. *Id*.

By letter dated December 10, 2014, Asare explained that "[a]ny condition that a patient has that to the best of my knowledge will potentially have any negative effect on the outcome of the surgery or recovery process will disqualify the patient." Asare Letter, ECF No. 93-4. Elaborating further, Asare listed "[e]xamples of cases [he doesn't] operate on." *Id*. One example was a "history of HIV infection." *Id.* Other examples included "obesity, uncontrolled diabetes, uncontrolled hypertension, recent stroke or heart attack, history of some types of cancer, history of DVT in the past, clotting disorders, history of active Hepatitis B and C as well as other chronic viral infections." *Id*. Asare concluded that "[j]ust like any other Cosmetic Surgeon, I have some qualifying and disqualifying criteria based on my comfort level and how much risk or stress I am willing to take![] I think that is my right as a Cosmetic Surgeon![]" *Id*.

On May 6, 2015, the Government filed a two-count action under the enforcement provisions of the ADA, which permit the Attorney General (1) to file a civil action when he or she "has reasonable cause to believe that . . . . [a] person or group of persons is engaged in a pattern or practice of discrimination," 42 U.S.C. § 12188(b)(1)(B), and (2) to seek "such . . . relief as the court considers to be appropriate, including monetary damages to persons aggrieved," *id*. § 12188(b)(2)(B).

The Government's complaint alleges that Defendants (1) have engaged in a "pattern or practice" of discrimination on the basis of disability, including HIV as well as other disabilities, and (2) discriminated against Milano "because he is living with HIV." *See* Compl. ¶¶ 35–43. The complaint seeks declaratory relief, injunctive relief, and civil penalties, as well as monetary damages for Milano as a "person aggrieved." *Id*. at 8–9. The complaint does not mention John

4

Does 1 or 2 specifically, who the Government had not yet identified as potential "persons aggrieved" at the time it brought this action. However, the Government notified Defendants of its intention to seek damages for John Does 1 and 2 in August 2016, during the discovery process.[2] Gov't Letter, at 1.

---

[2] In their third motion *in limine*, Defendants sought to exclude the testimony of John Does 1 and 2 on the ground that the Government could not seek damages for them without identifying them in the complaint. *See* ECF No. 132. The Court granted the motion, *see* ECF No. 149, but the Government sought reconsideration, *see id.*; Gov't Letter, which Defendants opposed, Defs. Letter, ECF No. 144. Upon review, the Court agrees with the Government's contention that it was not required to identify John Does 1 and 2 in its complaint in order to seek damages on their behalf at the later remedies stage.

Although there appear to be no cases interpreting the ADA's enforcement provisions that permit the Government to seek damages on behalf of "persons aggrieved," there are cases interpreting almost identical provisions in the Fair Housing Act ("FHA"). Like the ADA, which permits courts to "award such other relief as the court considers to be appropriate, including monetary damages to persons aggrieved when requested by the Attorney General," 42 U.S.C. § 12188(b)(2)(B), the FHA permits courts to "award such other relief as the court deems appropriate, including monetary damages to persons aggrieved" in civil suits brought by the Attorney General, 42 U.S.C. § 3614(d)(1)(B). In *United States v. Balistrieri*, the Government appealed the district court's decision not to permit it to seek damages under the FHA for two victims of the defendants' pattern or practice of discrimination who were not named in the complaint. 981 F.2d 916, 935 (7th Cir. 1992). The Seventh Circuit reversed, holding that "[t]here was no reason to allow the government to seek damages only for aggrieved persons it knew about at the time it filed its complaint." *Id*. Admittedly, in *Balistrieri*, the Government did request damages for unspecified "aggrieved persons" in its complaint. *Id*. at 934, 936. But the circuit's reasoning for permitting the government to seek damages was based largely on the facts that "[t]he government's complaint notified the defendants of the claim against them; [and] the government properly proceeded to flesh out that claim through the discovery process." *Id*. at 935. For example, "[t]he government told the defendants about [the victims] as soon as it found out about them," precluding any argument of an "eleventh-hour notice." *Id*. at 936. Additionally, the fact that the government informed defendants about five or six months before trial ensured there was no prejudice to defendants. *Id*. The circuit held that this constituted "sufficient notice" to the defendants. *Id*. at 935.

The Court concludes that the reasoning in *Balistrieri* applies equally here. The Government was not required to identify all "aggrieved persons" in its complaint so long as Defendants were given "sufficient notice." *Id*. (explaining that the defendants were "entitled to sufficient notice of the people for whom the government sought damages"). And as stated above, Defendants were informed that the Government would seek damages for John Does 1 and 2 almost two years before trial. This constitutes sufficient notice.

On December 11, 2015, Milano filed a motion to intervene, ECF No. 17, which the Court granted, ECF No. 30. In addition to one ADA claim, Milano brought two claims under the HRL. *See* Milano Compl. ¶¶ 47–60. Milano's complaint seeks declaratory relief, injunctive relief, damages, and reasonable attorneys' fees and costs. *Id*. at 9–10.

III.   Cross-Motions for Summary Judgment

The Government and Milano (sometimes, "Plaintiffs") now jointly move for summary judgment on their respective claims. The Government argues that "Defendants have a blanket policy of denying services to individuals with a 'history of HIV infection,' along with a host of other disabilities" which Defendants have applied "to at least three different men": Milano, John Doe 1, and John Doe 2. Gov't Mem. at 1, ECF No. 92. The Government argues that this policy constitutes a pattern or practice of discrimination that violates the ADA in two ways. First, the Government argues, Defendants' policy impermissibly imposes eligibility criteria that tends to screen out individuals with HIV, in violation of 42 U.S.C. § 12182(b)(2)(A)(i). *See id*. at 13–17. Second, in applying this policy, Defendants failed to make or even consider reasonable modifications to their services to accommodate individuals with HIV, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii). *See id.* at 17–19.

Milano argues that Defendants violated the ADA's "screen out" and "reasonable modification" provisions by applying this discriminatory policy to him. Milano Mem. at 7–8, ECF No. 94. Milano also argues that Defendants violated the HRL by (1) "directly or indirectly refusing service" to Milano because of his HIV status, (2) "stating or representing that service will be directly or indirectly denied because of" Milano's HIV status, and (3) "failing to make reasonable accommodations to provide access to services." *Id*. at 22.

Defendants oppose, arguing, first, that they do not have a policy of categorically denying services to individuals living with HIV. Defs. Mem. at 16–18, ECF No. 105. Rather, Defendants state that they deny services depending on "whether the patient is taking anti-retroviral medications." *Id*. at 17. Additionally, Defendants argue that denying services because an individual takes antiretroviral drugs is, essentially, a reasonable medical judgment that does not violate the ADA's "screen out" and "reasonable modification" provisions. *Id*. at 19–33. Defendants also cross-move for summary judgment on the Government's claim that Defendants discriminate against individuals with disabilities other than HIV.

## DISCUSSION

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To that end, "[t]he moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017). "[I]f a movant meets his or her burden . . . , the nonmovant must introduce evidence to establish that a genuine dispute of material fact exists." *Id*. at 99.

The same standard applies to cross-motions for summary judgment. *United Indus. Corp. v. IFTE plc*, 293 F. Supp. 2d 296, 299 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Id*.

II. Application

    A. Americans with Disabilities Act Claims

The ADA prohibits discrimination on the basis of disability. *See* 42 U.S.C. § 12182(a). The statute defines discrimination in two ways, among others, that are relevant here. First, discrimination is "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities . . . unless such criteria can be shown to be necessary." *Id*. § 12182(b)(2)(A)(i). Second, discrimination is "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary . . . , unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." *Id*. § 12182(b)(2)(A)(ii). As explained above, Plaintiffs argue that Defendants have discriminated against Milano and other individuals living with HIV in both ways.

As an initial matter, Defendants concede that they apply eligibility criteria that tend to screen out individuals living with HIV. Defs. Mem. at 19 ("The defendants do not deny that Dr. Asare's determination that HIV+ patients taking antiretroviral medications are medically unsuitable for his procedures constitutes an eligibility criterion that tends to screen out a class of individuals with disabilities (persons with HIV) from his cosmetic surgery services."). Specifically, Defendants admit that they do not operate on "HIV+ patients taking antiretroviral

medications" out of concern that antiretrovirals will interact with the sedative cocktail Asare administers to patients and will thereby cause oversedation. *Id.* Defendants further concede that they applied this policy to Milano. Pls. 56.1 Statement ¶ 18.

Defendants, however, have not conceded that they applied this policy to John Does 1 or 2. Defendants claim that they canceled John Does 1 and 2's procedures because each of their lab results raised the suspicion that they "*may* have been HIV positive." *See* Defs. Mem. at 9, 11 (emphasis added); *see also* Pls. 56.1 Statement ¶¶ 31, 35, 41. In the case of John Doe 2, Defendants claim that John Doe 2 decided to cancel the surgery after discussing the possibility of an HIV diagnosis with Asare at two appointments. *See id.* ¶ 38. In the case of John Doe 1, the HIV test was inconclusive and it is not clear what happened next. *Id.* ¶ 41.

In any event, on this record, the Court cannot determine whether Asare made a final and conclusive decision to reject John Does 1 and 2 as candidates for gynecomastia surgery based on the possibility that they might be living with HIV. Mindful that, at the summary judgment stage, the Court "must view all facts in the light most favorable to the non-moving party," *Connecticut Ironworkers*, 869 F.3d at 98–99, the Court concludes that what policy, if any, Defendants applied to John Does 1 and 2 is a disputed issue of material fact that must be resolved at trial. Accordingly, this Amended Opinion addresses only Defendants' undisputed policy of denying services to individuals taking antiretrovirals and the policy's application to Milano.

1. "Screen Out" Discrimination

Because Defendants concede that their policy against antiretrovirals screens out individuals living with HIV, the sole remaining dispute for the purposes of Plaintiffs' overlapping "screen out" claims is whether applying the criteria is "necessary," and, therefore, permissible under the ADA. As the Second Circuit has not given much content to the

9

"necessary" defense in § 12182(b)(2)(A)(i) of the ADA, the defense is a matter of first impression. Other circuit courts, however, have found that eligibility criteria can be considered "necessary" when they are imposed to ensure safety,[3] *Bauer v. Muscular Dystrophy Ass'n, Inc.*, 427 F.3d 1326, 1331–32 (10th Cir. 2005) (holding that the district court's finding that a summer camp's requirement that volunteers be able to lift and care for a camper was necessary for the safe operation of the camp was not erroneous); *Theriault v. Flynn*, 162 F.3d 46, 50 (1st Cir. 1998) (holding that it was permissible for a licensing officer to require an individual with an apparent lack of hand control to take a road test prior to renewing his license to operate a vehicle equipped with hand controls because "the safety of the public at large is implicated"), or to achieve the essential purpose of the services offered, *Easley by Easley v. Snider*, 36 F.3d 297, 303–04 (3d Cir. 1994) (holding that mental alertness was necessary to participate in an attendant care program whose essential purpose was to help the physically disabled).

Defendants argue that they do not operate on anyone taking antiretroviral drugs out of concern, as the law permits, for patient safety. But Defendants also go a step beyond this argument, maintaining "that medical decision-making is a specialized context that requires a cautious approach when analyzing disability discrimination claims." Defs. Mem. at 21. Citing mostly district court cases outside this circuit, Defendants argue that, for the purposes of the "necessary" defense (1) Plaintiffs should be required to show that Defendants' stated reason for refusing to perform procedures on individuals taking antiretroviral drugs was pretextual, and (2)

---

[3] Indeed, ADA regulations permit the imposition of "legitimate safety requirements," if necessary, as long as they are "based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 36.301(b). Defendants argue that these regulations are not meant to apply to medical judgments. As the Court does not base its decision on these regulations, however, it need not decide the applicability of the regulations.

if Plaintiffs fail, Defendants' reason should be entitled to deference. *Id*. at 25. The Court rejects Defendants' attempt to turn the "necessary" defense on its head.

As Plaintiffs point out, *see* Milano Reply at 6–8, Defendants' argument does not account for the Supreme Court's decision in *Bragdon v. Abbott*, 524 U.S. 624 (1998). Indeed, four out of the five cases Defendants rely upon pre-date *Bragdon*. *See* Defs. Mem. at 21–24. As *Bragdon* establishes "that courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments," *Bragdon*, 524 U.S. at 650, the Court rejects Defendants' outdated framework. The ultimate burden is on Defendants to show their criteria are "necessary," not on Plaintiffs to show that Defendants' reasons for the criteria are pretextual. To conclude otherwise would do violence to the language and purpose of the ADA.

Because Defendants bear the ultimate burden of proving the necessity defense at trial, Plaintiffs are entitled to summary judgment if they can demonstrate that Defendants failed to present evidence to support necessity. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) ("[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim. Thus, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions.").

Here, there is no evidence that Defendants' policy of rejecting individuals who take antiretrovirals is necessary. Defendants categorically refuse to provide cosmetic surgery services to patients taking antiretrovirals. As Asare testified at his deposition, when a "person comes to [him and says], oh, okay, I'm HIV positive," he then asks that person "Are you on [the

11

antiretroviral] cocktail?" Asare Tr. at 135:22–23, ECF No. 93-10. If yes, "[c]ase closed." *Id*. at 135:24. This policy of automatic rejection, however, is not based on necessity. Asare admits that some antiretroviral drugs are not contraindicated for the drugs in his sedative protocol, *id*. at 152:15–154:23, but he does not investigate further because, as he testified, "I just don't feel comfortable," *id*. at 308:16–17. And, despite this admission, Asare still declines to investigate what type of antiretroviral drug a potential patient is taking or its possible effects, *id*. at 239:8–10 ("Q[:] So you're not concerned about any specific type of antiretroviral drugs, right? A[:] No."), including for Milano, *id*. at 308:7 ("I didn't research on Mr. Milano's drugs.").

The undisputed facts, therefore, demonstrate that Defendants have conceded both that refusing services to individuals taking antiretrovirals is not always necessary and that Defendants apply their knee-jerk policy without making an individualized inquiry as to its necessity. Indeed, Defendants posit that they need not demonstrate necessity. Instead, they marshal their evidence in an attempt to establish that Defendants' purported concern about oversedation is "reasonable." *See generally* Defs. Mem.; Defs. Reconsideration Mem. But, as explained in the Court's discussion of *Bragdon*, the question is not whether the purported concern of oversedation is *reasonable*. The question is whether a blanket rejection of individuals taking antiretrovirals is *necessary*. Defendants cannot meet their burden to demonstrate necessity while admitting that not all drugs are contraindicated with Asare's sedative protocol. They have, therefore, run afoul of the ADA.[4]

---

[4] In their Motion for Reconsideration, Defendants argue that the Court ignored their expert's testimony that Asare's concern about oversedation was "an actual risk" and "not an unreasonable concern." Defs. Reconsideration Mem. at 16, ECF No. 121-1. This is incorrect. Again, that the purported concern of oversedation may sometimes be reasonable does not support the conclusion that a blanket rule is necessary. And, in fact, Defendants' expert testified that even if there was some level of risk, he still would have operated on Milano because the risk was manageable. Ehrenfeld Tr. 203:6–18, ECF No. 93-12.

## 2. "Reasonable Modification" Discrimination

Plaintiffs additionally argue that, even if patient safety was a risk, Defendants violated the ADA's provision requiring them to make reasonable modifications. Plaintiffs urge that Defendants should have (1) hired an anesthesiologist to monitor or assist in the surgery, (2) referred patients to another physician in the same practice, or (3) adjusted the sedative protocol preceding surgery. Gov't Mem. at 19; Milano Mem. at 18–19. However, as Defendants note, they are not in violation of the ADA if they "can demonstrate that making such modifications would *fundamentally alter* the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added). Defendants contend that each of Plaintiffs' suggested modifications would either fundamentally alter the nature of the surgery or are not mandated by the ADA. The Court disagrees.

Title III of the ADA imposes a "basic requirement that the need of a disabled person be evaluated on an individual basis." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 690 (2001). As such, the "refusal to consider [an individual's] personal circumstances in deciding whether to accommodate his disability runs counter to the clear language and purpose of the ADA." *Id*. at 688. Instead, "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." *Id*. (citing S. Rep. No. 101–116, at 61; H.R. Rep. No. 101–485, pt. 2, at 102, U.S. Code Cong. & Admin. News 1990, pt. 2, at pp. 303, 385 (public accommodations "are required to make decisions based on facts applicable to individuals")).

As explained above, Defendants admit that they refuse to perform cosmetic surgery on individuals taking antiretroviral medications without making any further inquiry into the

13

patient's medical history or medication regime. *See* Asare Tr. at 135:22–24 (testifying that if a person is taking antiretroviral drugs, then "[c]ase closed"). Furthermore, Defendants admit that Asare told Milano he was not a suitable candidate for the gynecomastia procedure as soon as Asare discovered that Milano was taking antiretroviral medications, and without further inquiry. Pls. 56.1 Statement ¶ 18. As in the context of "screen out" discrimination, this fact is dispositive. By failing to evaluate a person's disabilities "on an individual basis," *Martin*, 532 U.S. at 690, Defendants have violated the ADA.

Even if this fact were not dispositive, Defendants' arguments would still fail. Plaintiffs proposed three modifications: use of an anesthesiologist, referral to another doctor, or adjustment to the sedation drugs. Milano Mem. at 17–20. Defendants argue that there are material facts in dispute as to whether each of these modifications would "fundamentally alter" the cosmetic procedure.

Here, it is Defendants' burden to prove that the proposed modifications would "fundamentally alter" the procedure. 42 U.S.C. § 12182(b)(2)(A)(ii) (defining discrimination as an entity's failure to make reasonable modifications "unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods . . . [or] services"). Absent evidence of fundamental alteration, Defendants cannot survive a motion for summary judgment. *Brady*, 863 F.2d at 211.

With respect to Plaintiffs' first proposed modification—use of an anesthesiologist—it is clear Defendants cannot meet their burden. Plaintiffs have successfully "point[ed] to an absence of evidence to support" Defendants' claim that having an anesthesiologist monitor the procedure would work a *fundamental* alteration. *Brady*, 863 F.2d at 211. Indeed, the only facts Defendants muster to support their argument to the contrary are that "Dr. Asare's [sedative] protocol, as

14

practiced by himself and other physicians, is self-administered by the treating physician, without the use of anesthesiology services." Defs. Mem. at 32. These facts establish that the presence of an anesthesiologist would be an alteration to the procedure. These facts, however, do not support Defendants' contention that "[t]he very 'nature' of the protocol" would be altered. *Id*. After all, the sedative protocol would still be "self-administered by the treating physician," with an anesthesiologist present to assist only if oversedation, in fact, occurred. Because Defendants fail to provide any evidence that using an anesthesiologist would *fundamentally* alter the procedure, the Court concludes, as before, that Defendants have violated the "reasonable modification" provision of the ADA. Accordingly, the Court need not address the other two proposed modifications.

### 3. Cross-Motion on Non HIV-Related Disabilities

The Government's complaint alleges that Defendants have a pattern or practice of discriminating not only against individuals living with HIV, but also against individuals living with a number of other disabilities. *See* Compl., ¶¶ 36, 39; *supra* Background. The Government moves for summary judgment on this claim as well, but Defendants cross-move for summary judgment, arguing, essentially, that the Government has not demonstrated that Defendants have a pattern or practice of discrimination against individuals with disabilities other than HIV. Specifically, Defendants argue that Plaintiffs' only evidence of a pattern or practice is Asare's letter of December 2014 listing examples of cases he does not operate on, as well as a print-out of anonymous online reviews of Asare. Defs. Cross. at 7, ECF No. 103. Without identifying a disabled individual who was denied services for a disability other than HIV, Defendants contend, the Government's reliance on the letter and anonymous internet reviews is insufficient. *Id*. at 19–20.

The Court agrees with Defendants that the Government has failed to meets its burden with respect to its claim of discrimination against individuals living with disabilities other than HIV. Unlike their policy of rejecting patients taking antiretrovirals, Defendants have not conceded that they have a policy against individuals with other disabilities. *See* Defs. Cross. The Government relies solely on the December 2014 letter, the online reviews, and testimony from Asare which, in fact, establishes that he did perform surgery on an individual with another disability. Gov't Reply at 21–22. And the Government has not identified an instance where Asare has actually applied any screen out criteria or refused reasonable modifications to an individual with a disability other than HIV. Even taking all facts in the light most favorable to the non-moving party, as the Court must, *Connecticut Ironworkers*, 869 F.3d at 98–99, the documentary and testimonial evidence the Government presents only proves that Asare took a potential patient's medical conditions into account before performing surgery. Without more, therefore, the Court concludes that Defendants are entitled to summary judgment on the Government's claims premised on disabilities other than HIV.

B. New York City Human Rights Law § 8-107

Beyond the ADA claims, Plaintiff Milano argues that Defendants have violated the HRL. As Milano highlights, the relationship between federal law and the HRL "is now a one-way ratchet." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). "Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a *floor* below which the City's Human Rights law cannot fall." *Id*. (quoting Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)). As a floor, therefore, any violation of the ADA is automatically a violation of the HRL.

Although Defendants are correct that this case is replete with disputed facts, the Court's opinion rests only on Defendants' admitted policy of denying services to individuals taking antiretrovirals, Defendants' failure to make individualized inquiries, and the lack of evidence of necessity or fundamental alteration.

## CONCLUSION

For the reasons stated above, Plaintiffs' joint motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Plaintiffs' motion is GRANTED as to Defendants' adoption and application of a policy denying services to individuals taking antiretrovirals. The Government's motion is DENIED as to John Does 1 and 2 and any claims based on disabilities other than HIV. Defendants' cross-motion for summary judgment is GRANTED.

Additionally, this Amended Opinion resolves questions raised in Defendants' motion for reconsideration of the Original Opinion and in the Government's motion for reconsideration of the Court's ruling on Defendants' third motion *in limine*. Accordingly, Defendants' motion for reconsideration is DENIED. The Court's ruling on Defendants' third motion *in limine* is VACATED and Defendants' third motion *in limine* is DENIED. The Government's motion to reconsider the *in limine* ruling is DENIED as moot.

The Clerk of Court is directed to terminate the motions at ECF Nos. 121, 130, 132, 147, and 152. By **June 8, 2018**, the parties shall file a joint letter informing the Court how they wish to proceed.

SO ORDERED.

Dated: June 1, 2018
      New York, New York

_____
ANALISA TORRES
United States District Judge