| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>    -and-<br><br>MARK MILANO,<br><br>                        Intervening Plaintiff,<br><br>    -against-<br><br>EMMANUEL O. ASARE, M.D., and<br>SPRINGFIELD MEDICAL AESTHETIC P.C.<br>d/b/a ADVANCED COSMETIC SURGERY OF<br>NEW YORK,<br><br>                        Defendants. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>11/4/2019</u><br><br><br>15 Civ. 3556 (AT)<br><br>**<u>ORDER</u>** |

ANALISA TORRES, District Judge:

      Before the Court are the objections of Defendants, Emmanuel O. Asare, M.D. and Springfield Medical Aesthetic P.C. d/b/a Advanced Cosmetic Surgery of New York, to the testimony of court-appointed expert, Timothy Wilkin, M.D., M.P.H. Def. Obj., ECF No. 244. The Government opposes Defendants' objections in their entirety. Gov't Opp., ECF No. 245. For the reasons stated below, Defendants' objections are OVERRULED.

## BACKGROUND

      From October 15 to October 17, 2018, the Court conducted a bench trial in this action. ECF Nos. 189–191. On October 18, 2018, Defendants moved to strike the testimony of Plaintiffs' expert, Charles Flexner, M.D. ECF Nos. 193, 194. On November 26, 2018, the Court determined that a neutral expert was needed and issued an order requiring the parties to show cause why the Court should not appoint an expert "to prepare a report, sit for a deposition, and testify at trial concerning all subjects raised in Dr. Flexner's testimony, pursuant to Federal Rule of Evidence 706(a)." Order to Show Cause ¶ 1, ECF No. 206. The Court ordered the parties to

"submit (a) a joint letter identifying their agreed-upon expert, along with a curriculum vitae, and (b) a list of the issues about which the [e]xpert shall opine." *Id.* ¶ 2. The Court offered Defendants the opportunity to present their own expert, first on December 12, 2018, ECF No. 213 at 2, then again on April 30, 2019, ECF No. 225. Defendants declined to do so. Joint Letter at 2, ECF No. 228.

On May 20, 2019, the parties submitted their joint letter. *Id.* at 1–2. Although the parties did not agree upon an expert, they identified three potential experts: Susan C. Ball, M.D., M.P.H., M.S., William Mandell, M.D., and Timothy Wilkin, M.D., M.P.H. *Id.* at 1. The parties agreed that the expert would opine on these issues:

1. Universal precautions;

2. HIV testing, including its use prior to surgery, the duties and obligations associated with obtaining consent to HIV testing in New York State, and the standard of care for the use of HIV testing in New York State;

3. The care and treatment of individuals living with HIV, including whether they are appropriate candidates for surgery;

4. Whether knowledge of HIV-status is necessary prior to performing surgery; and

5. Whether Defendants' HIV testing practices are consistent with universal precautions, the standards associated with HIV testing, and the standards associated with the care and treatment of individuals living with HIV.

Joint Letter at 1–2. On May 23, 2019, the Court selected Dr. Wilkin as the neutral expert. ECF No. 229. The parties deposed him on August 13, 2019. *See* ECF No. 242 at 1.

On June 17, 2019, the Court ruled on Defendants' motion to strike the testimony of Dr. Flexner. June 17, 2019 Order at 13, ECF No. 235. The Court held that Dr. Flexner's testimony

2

that "the standard of medical care in the State of New York is *probably* identical, if not nearly identical to the standard of care of medical practice in the State of Maryland," Trial Tr. 391:1–3 (emphasis added), was speculative and must be stricken. June 17, 2019 Order at 13. Moreover, the Court concluded that Dr. Flexner was not qualified to offer testimony on (1) the standard of medical care in New York or (2) state patient consent laws, and, therefore, that such testimony must be stricken. *Id.*

By letter dated August 28, 2019, the parties informed the Court that they had agreed to designate Dr. Wilkin's deposition testimony as trial testimony, "waiving all objections to admissibility except the specific objections identified" by Defendants. ECF No. 242 at 1. The parties requested that "unless the Court has questions for Dr. Wilkin, the trial day be adjourned *sine die*." *Id.*

On September 9, 2019, the Court adjourned the trial day *sine die* and ordered the parties to brief their respective positions regarding Defendants' objections to Dr. Wilkin's deposition testimony. ECF No. 243 at 1.

## DISCUSSION

I.  Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. It provides in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. District courts are the gatekeepers of expert testimony, responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). For an expert's opinion to be admissible, "the witness must be qualified as an expert, the testimony must be reliable, and the testimony must assist the trier of fact." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 172 (S.D.N.Y. 2009).

Courts first address "the threshold question of whether a witness is 'qualified as an expert by knowledge, skill, experience, training, or education' to render his or her opinions." *Nimely v. City of New York,* 414 F.3d 381, 396 n.11 (2d Cir. 2005) (quoting Fed. R. Evid. 702). "Courts in the Second Circuit liberally construe the expert qualifications requirement, and generally will not exclude expert testimony provided the expert has educational and experiential qualifications in a general field closely related to the subject matter in question." *I.M. v. United States*, 362 F. Supp. 3d 161, 192 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Assertions that an expert witness lacks certain educational or other experiential background, "go to the weight, not the admissibility, of [the] testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 at 596.

"[B]ecause the federal rules emphasize liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992) (internal quotations marks and

citation omitted). "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).

II. Analysis

    A. Treatment of Mark Milano

In an earlier opinion, the Court granted summary judgment on the issue of liability with respect to Intervening Plaintiff Mark Milano, one of the individuals who sought Dr. Asare's services for treatment of gynecomastia. ECF No. 154 at 17. At his deposition, Dr. Wilkin summarized the opinions he set forth in his expert report. Wilkin Tr. 11:21-12:3 ("Q: So in the next series of questions I'm just going to want you to summarize what is in the report so we have it as testimony and so I'm literally going to ask you what each of the components are and what your opinions are. Is that fair? A: Yes."). This included his "understanding" and "opinion" concerning the case of Milano. Def. Obj. at 1; Wilkin Tr. 12:9-16:14.

Defendants argue that Dr. Wilkin's testimony concerning Milano should be stricken in its entirety because the testimony exceeds the scope of Dr. Wilkin's "mandate" and "the subjects identified by the parties for Dr. Wilkin to consider," and because the Court has already decided the liability issues with respect to Milano. Def. Obj. at 1–2. The Government contends that the testimony should not be stricken because "it is within the scope of his expertise and properly considered in the context of Defendants' treatment of individuals with HIV." Gov't Opp. At 3. The Court agrees.

First, Dr. Wilkin's testimony falls squarely within his mandate. Dr. Wilkin was to "prepare a report, sit for a deposition, and testify at trial concerning all subjects raised in Dr. Flexner's testimony." Order to Show Cause ¶ 1. At trial, Dr. Flexner's testimony concerned

"issues surrounding performing HIV testing on patients in advance of surgery" which included: "when the previous standard practice of testing all patients for HIV prior to surgery changed due to the adoption of so-called universal precautions, when HIV testing of surgical patients would be medically indicated, and the legal requirements for obtaining consent from HIV patients prior to testing." ECF No. 193 at 1 (Defendants' description of Dr. Flexner's testimony).

Dr. Wilkin testified as to Defendants' standard approach when dealing with patients with non-HIV medical conditions who sought elective surgery, Wilkin Tr. 15:3-16, and his understanding that patients with HIV would be "treated the same way," *id.* at 15:17-18. Dr. Wilkin opined that Dr. Asare did not operate within the standard of care with respect to Milano's HIV infection. *Id.* at 16:2-14. This testimony concerns subjects raised in Dr. Flexner's testimony, namely, "issues surrounding performing HIV testing on patients in advance of surgery." ECF No. 193 at 1. This would be true even if Dr. Flexner had not explicitly referenced Milano.

Second, Defendants' argument that Dr. Wilkin's testimony extends beyond the subjects identified by the parties also fails. The parties explicitly agreed that Dr. Wilkin would provide opinions regarding, *inter alia*, "[t]he care and treatment of individuals living with HIV, including whether they are appropriate candidates for surgery." Joint Letter at 2; *see also* Gov't Opp. at 3. This is precisely what he did.

Last, Dr. Wilkin's testimony with respect to Milano is still relevant and admissible notwithstanding this Court's ruling on liability. Although not germane to the issue of Milano's damages, the testimony is relevant to the Government's case. *See* Gov't Opp. at 4. The Court agrees with the Government that "Defendants' practice vis-à-vis individuals living with HIV is a

6

central issue in this case, and Dr. Wilkin's testimony" regarding Milano "is probative of how Defendants treat individuals living with HIV." *Id.*

Because Dr. Wilkin's testimony may "help the [Court] to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, Defendants' objection to Dr. Wilkin's testimony regarding Milano is OVERRULED.

### B. Medical Standard of Care for Preoperative HIV Testing of Surgical Patients

Dr. Wilkin was also asked to opine on "HIV testing, including its use prior to surgery, the duties and obligations associated with obtaining consent to HIV testing in New York State, and the standard of care for the use of HIV testing in New York State." Joint Letter at 1. With respect to this topic, Dr. Wilkin testified that he does not think that "universal testing for HIV prior to elective surgery or minor elective surgery is a routine approach" and "it is unusual for a surgeon to universally test his patients prior to surgery." Wilkin Tr. 18:9-11, 15-17. Moreover, he stated that he thinks "it's unusual that Dr. Asare would test broadly for HIV; in other words, it's unusual for him to test all of his patients prior to surgery, but the idea of a broad application of HIV testing is within the general approach for the HIV epidemic in the U.S." *Id.* at 19:4-9.

According to Defendants, the "upshot" of this testimony "appears to be that [Dr. Wilkin] believes Dr. Asare violated the medical standard of care with respect to preoperative HIV testing, by performing HIV testing on J.G. and S.V." Def. Obj. at 2. Defendants argue that this testimony should be stricken because Dr. Wilkin is not qualified to offer this opinion because he "has no medical training in cosmetic or plastic surgery," and his expert report did not indicate that he consulted any secondary sources related to this topic. Def. Obj. at 2–3. The Court disagrees.

As an initial matter, the Court found that Dr. Wilkin was qualified to offer an opinion on

this topic when it appointed Dr. Wilkin as the Court's expert. ECF No. 229. This was after the parties had already agreed that Dr. Wilkin would opine on "HIV testing, including its use prior to surgery" and "[w]hether knowledge of HIV-status is necessary prior to performing surgery." Joint Letter at 1–2. Nevertheless, the Court addresses Defendants' arguments on the merits and holds that Dr. Wilkin is qualified to offer an opinion on the medical standard for preoperative HIV testing of surgical patients. Dr. Wilkin is a board certified internal medicine and infectious diseases physician, and associate professor at Weill Medical College of Cornell University. ECF No. 228-2 at 3–4. He is a primary care provider for patients living with HIV. *See* Wilkin Tr. 67:15-25. His current focus and specialty is in HIV care and treatment at Weill's Center for Special Studies. *See* ECF No. 228-2 at 6; *see also* Joint Letter at 1. And, Dr. Wilkin has experience performing minor surgical procedures on patients. Wilkin Tr. 54:15-55:7.

Moreover, Dr. Wilkin's testimony concerns HIV testing protocols prior to surgery; protocols Dr. Wilkin would be familiar with through his work as a primary care physician ("PCP"). As a PCP for patients living with HIV, Dr. Wilkin is the primary point of contact for other medical professionals who offer services to individuals with HIV. *See* Gov't Opp. at 6. Throughout Dr. Wilkin's deposition, he described the frequent communication and coordination that takes place between a surgeon and a patient's PCP. *See, e.g.*, Wilkin Tr. 15:8-16 ("So in general, their standard would be to receive additional input from the patient's [PCP] or another specialist as to the safety of performing an elective surgery in a patient with these conditions."); 39:6-24 ("Q: So according to these notes, Dr. Asare advised [S.V.] to follow up with his [PCP] about these various test results? A: Yes."). Given the role of PCPs in the preoperative context, and because Dr. Wilkin's testimony concerns a preoperative matter, Dr. Wilkin is distinguishable from the expert whose testimony was excluded in *In re Mirena IUD Prod. Liab. Litig.*, 169 F.

Supp. 3d 396, 465 (S.D.N.Y. 2016), a case relied on by Defendants, Def. Obj. at 3, where a regulatory expert sought to testify about whether a specific clinical procedure could cause certain types of perforations.

Dr. Wilkin's testimony is admissible because his experience is "closely related to the subject matter in question" and Courts in the Second Circuit "generally will not exclude expert testimony" in such cases. *I.M.*, 362 F. Supp. 3d at 192. Of course, Defendants may argue in their post-trial briefing that Dr. Wilkin's testimony should be afforded less weight because assertions that an expert witness lacks certain educational or other experiential background "go to the weight, not the admissibility, of [the] testimony." *McCullock*, 61 F.3d at 1044. Defendants' objection is, therefore, OVERRULED.

### C. Testing for HIV Without Patients' Knowledge and Consent

Defendants also object to Dr. Wilkin's opinion that "'Dr. Asare violated New York State law regarding HIV testing' based on J.G. and S.V. 'g[iving] similar accounts of being tested for HIV infection without their knowledge.'" Def. Obj. at 3–4 (quoting Wilkin Tr. 22:7-13) (brackets in original). They move to strike this testimony because "Dr. Wilkin is making specific factual findings – about whether Dr. Asare in fact complied with the requirements of New York State law regarding HIV testing – based on his own impressions of the disputed evidence." Def. Obj. at 4. The Government argues that Dr. Wilkin did not make any "factual findings." Gov't Opp. at 6. Rather, Dr. Wilkin provided an opinion "contingent on certain factual findings." *Id.* In other words, Dr. Wilkin's opinion is premised on the assumption that certain facts are true, based on his review of the trial testimony. The Court agrees that there is nothing improper about Dr. Wilkin forming an opinion contingent on certain facts being true.

Experts regularly provide opinions based on facts they assume to be true. *See Williams* v.

9

*Illinois*, 567 U.S. 50, 57 (2012) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true."). Even "[w]here the credibility of [a] witness is an issue, [an] expert may assume the truth of [the witness'] trial testimony and thereafter offer an opinion based on the substance of the testimony." *United States v. Scop*, 846 F.2d 135, 143 (2d Cir. 1988).

Dr. Wilkin was specifically asked to provide an opinion as to "HIV testing, including its use prior to surgery, the duties and obligations associated with obtaining consent to HIV testing in New York State, and the standard of care for the use of HIV testing in New York State." Joint Letter at 1. Dr. Wilkin reviewed New York state law, his own experience, and the trial testimony, assuming certain facts to be true, in order to (1) discern the proper standard of care in New York and (2) provide an opinion as to whether Defendants' practices met or fell short of that standard of care. *See* Wilkin Expert Report, Appendix 1 and 2. Although his testimony is admissible, the Court is free to ignore it should the Court determine that the facts assumed by Dr. Wilkin are not true. *See* Gov't Opp. at 6. Defendants' objection is, therefore, OVERRULED.

D. Use of HIV Status as a Determinant for Conducting Surgery

Defendants' final objection to Dr. Wilkin's testimony is that "'Dr. Asare used HIV status alone as a determinant from conducting surgery.'" Def. Obj. at 4 (quoting Wilkin Tr. 29:16-19). They again move to strike testimony on the ground that Dr. Wilkin has made "specific factual findings based on his own impressions of the disputed evidence." Def. Obj. at 4. For the reasons discussed above, *see* II.C, the Court rejects these arguments. Dr. Wilkin is allowed to provide an opinion based on his review of the record and assuming certain facts to be true. *See, Williams*, 567 U.S. at 57; *Scop*, 846 F.2d at 143.

Defendants also argue that Dr. Wilkin's testimony is "baseless" because he contradicted

himself by testifying that, "it was reasonable for Dr. Asare to postpone S.V.'s surgery based on his lab results." Def. Obj. at 4. This, however, is not a reason to deem Dr. Wilkin's testimony inadmissible, but rather, a potential reason to afford less weight to Dr. Wilkin's testimony that "Dr. Asare used HIV status alone as a determinant from conducting surgery." Def. Obj. at 4. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Defendants' objection is, therefore, OVERRULED.

## CONCLUSION

For the reasons stated above, Defendants' objections to the testimony of Dr. Wilkin are OVERRULED. Dr. Wilkin's deposition testimony is ADMITTED as trial testimony. By **November 13, 2019**, the parties shall (1) file the transcript of Dr. Wilkin's deposition testimony on the public docket, with redactions, in accordance with the parties' agreement regarding the protection of confidentiality, *see* Trial Tr. 407:22-410:25 and (2) submit a joint proposed schedule for post-trial briefing.

SO ORDERED.

Dated: November 4, 2019
New York, New York

_____
ANALISA TORRES
United States District Judge