UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: 10/11/2022               │
└─────────────────────────────────────┘
```

UNITED STATES OF AMERICA,

                Judgment Creditor,

    v.

EMMANUEL O. ASARE and SPRINGFIELD
MEDICAL AESTHETIC PC,

                Judgment Debtors,

    and

TD BANK, N.A.,

                Garnishee.

15 Civ. 3556 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Judgment Creditor, the United States of America (the "Government"), moves for garnishment of funds in three accounts deposited with TD Bank, N.A., in the names of Judgment Debtors Emmanuel O. Asare, M.D. and Springfield Medical Aesthetics PC ("Springfield," and together with Asare, the "Judgment Debtors"). The Court held a hearing on August 3, 2022, and ordered supplemental briefing. For the reasons stated below, the Government's motion for garnishment is GRANTED, and Asare's request for exemptions is DENIED. Further, the Government's request for the imposition of a ten percent surcharge on the balance of the debt owed is GRANTED. The Government's request for an installment payment order is DENIED without prejudice to renewal.

## BACKGROUND[1]

On May 6, 2015, the Government brought this enforcement action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.  See* Compl., ECF No. 1. The Government alleged that Judgment Debtors denied cosmetic surgery services to individuals with disabilities, including human immunodeficiency virus ("HIV"), in violation of the ADA.  *See generally id.*  On February 10, 2016, Mark Milano filed an intervenor complaint alleging that Judgment Debtors denied him cosmetic surgery services on the basis of his HIV status in violation of the ADA and the New York City Human Rights Law (the "NYCHRL").  *See* ECF No. 31.  The Court held a bench trial from October 15 to 17, 2018.  ECF Nos. 189–91.

The Court held that the Judgment Debtors violated the ADA and the NYCHRL by discriminating against individuals living with HIV through preoperative testing and denial of services.  ECF No. 258; *see also* ECF No. 154.  On August 6, 2020, judgment was entered against Judgment Debtors in the amount of $390,000.  ECF No. 260.  On September 3, 2020, Judgment Debtors appealed the decision, ECF No. 263, but failed to file their opening brief, ECF No. 268. As a result, the appeal was dismissed, and the Second Circuit issued a mandate on January 21, 2021. *Id.*

The Government began collection efforts relating to the judgment on October 25, 2021, by serving a subpoena on TD Bank.  Childs Decl. ¶ 7, ECF No. 292.  On December 30, 2021, the Government served a restraining notice on TD Bank for Judgment Debtors' accounts.  *Id.*  On January 5, 2022, TD Bank answered the request, indicating that Judgment Debtors had three accounts with the bank, one in Asare and his wife's names (the "Savings Account"), one in Asare's name (the "Checking Account," and collectively with the Savings Account, the "Asare

---

[1] The Court presumes familiarity with the facts underlying the judgment entered in this case, *see* ECF No. 258, and only briefly repeats them.

Accounts"), and one in Springfield's name (the "Springfield Account", and collectively with the Asare Accounts, the "Accounts"). *Id.* ¶ 8; ECF No. 292-2; *see also* Tr. 8–11, ECF No. 287 (identifying the accounts). The Accounts held a total of $122,421.16 as of January 5, 2022. ECF No. 292-2. On January 13, 2022, the Government and Judgment Debtors engaged in informal discussions regarding the applicability of exemptions and the ownership of the accounts. Childs Decl. ¶ 10. However, Judgment Debtors were not responsive to the Government's requests for information. *Id.* ¶ 11; *see also* ECF No. 292-3.

On May 24, 2022, the Government moved for a writ of garnishment as to TD Bank. ECF No. 270. On June 1, 2022, the Court granted the writ, ordering that all funds in the Accounts be withheld and retained. ECF No. 271. TD Bank was further ordered to file an answer stating the amount in each of the Accounts and confirming that the funds were being withheld and retained. *Id.* On June 24, 2022, Asare filed a notice of exemptions, claiming two exemptions under New York law, and one under federal law. Notice, ECF No. 272. He also requested a hearing. *Id.* Springfield did not file a notice of exemptions. *See id.*; *see also* ECF No. 283 at 1. On June 29, 2022, the Court ordered that by July 5, 2022, Asare was to file "a statement under oath particularizing his claimed exemptions, including his ownership interest in the accounts at issue and the value he claims for each exemption," pursuant to 28 U.S.C. § 3014(b)(1). ECF No. 273. The Court also stated that a hearing would be set once it received an answer from TD Bank. *Id.* On July 11, 2022, over a week after the Court's July 5, 2022, deadline, Asare filed a declaration with one substantive paragraph stating that he had an ownership interest in the Asare Accounts and that the money in the accounts came from his earnings from his employment at Springfield. ECF No. 276. He provided no documentation with the declaration. *See id.* Also on July 11, 2022, the Government provided the Court with TD Bank's answer via email. *See* ECF No. 277. The

answer, dated July 8, 2022, indicated that the Judgment Debtors still had the Accounts with the bank, and that the total in the Accounts had increased to $133,694.94. ECF No. 292-10.

The Court, after considerable back-and-forth with counsel for Judgment Debtors regarding scheduling, set a hearing for July 28, 2022. ECF No. 282. The night before the hearing, on July 27, 2022, Judgment Debtors emailed the Court and the Government with three documents not previously provided to the Court to be used as exhibits at the hearing. They were: (1) the December 2021 statement for the Springfield Account; (2) the October to December 2021 statement for the Savings Account; and (3) undeposited paychecks for Asare from Springfield all dated in 2021.

On July 28, 2022, the hearing was adjourned on motion of Asare. ECF Nos. 284–85. It was rescheduled to August 3, 2022, and occurred via videoconference. ECF No. 286. At the beginning of the hearing, the Court asked the parties if all procedural requirements for the garnishment writ had been met. Tr. at 3–4. The only issue raised by Judgment Debtors was that the Springfield Account had a senior lien which should have received notice of the writ for garnishment, and that garnishment of the Springfield Account would be improper if there was a senior lien.[2]  *Id.* at 4–6. Judgment Debtors raised no other procedural issues. *Id.* During the hearing, the parties asked Asare, the sole witness, questions related to his claimed exemptions. *Id.* at 8–28. The Court also asked Asare questions to determine the applicability of the exemptions. *Id.* at 28–48. The Court ordered post-hearing briefing on: (1) the senior lien issue raised by Springfield, and (2) Asare's claimed exemptions. *Id.* at 6, 48–49. The parties submitted their post-hearing memorandums, but Judgment Debtors did not submit an optional reply memorandum. *See* Judgment Debtors Mem., ECF No. 290; Gov. Mem., ECF No. 291.

---

[2] This issue was only previously raised via email. *See* ECF No. 283 at 2 n.2.

4

To date, over two years since entry of judgment in this case, and over a year and a half since the abandoned appeal mandated, Judgment Debtors have made one, non-voluntary payment of $3,581.20 toward the judgment.  ECF No. 292-1; Tr. at 22; *see also* Childs Decl. ¶ 6.  As of August 22, 2022, the balance due on the judgment was $387,430.78.  Childs Decl. ¶ 6; ECF No. 292-1.

## DISCUSSION

Asare claims three exemptions to the writ of garnishment: (1) United States Bankruptcy Code 11 U.S.C. § 522(d)(5); (2) N.Y. CPLR § 5205(d)(2); and (3) N.Y. CPLR § 5205(l).  *See* Notice.  Additionally, Springfield argues that there are superior liens on its account which preclude the garnishment of its account.  Tr. at 4–6; *see also* ECF No. 283 at 2 n.2.  The Government, in addition to the garnishment, requests that the Court add a ten percent surcharge to the judgment balance pursuant to 28 U.S.C. § 3011, and order an installment payment schedule for Springfield. Gov. Mem. at 14 n.16, 14–15.  The Court shall address each in turn.

I.     Asare's Claimed Exemptions

   A.  Legal Standard

When the Government seeks to enforce a judgment through a garnishment "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."  28 U.S.C. § 3205(a).  After the court issues a writ of garnishment, the Government serves the garnishee and the judgment debtor with a copy of the writ, and the garnishee files a written answer indicating what property belonging to the debtor it holds.  *See* 28 U.S.C. § 3205(c)(1)–(4).  An individual debtor may elect to exempt property either (1) under the U.S. Bankruptcy Code, 11 U.S.C. § 522(d), or (2) under other federal law, or the state or local law of the debtor's domiciliary state.

28 U.S.C. § 3014(a).  The debtor may not claim exemptions under both 11 U.S.C. § 522(d) and state law.  *Id.*  After a debtor claims an exemption, the Court may order the debtor to file a statement, under oath, regarding the exemption.  28 U.S.C. § 3014(b)(1).  The debtor or the Government may request a hearing on the applicability of the exemptions.  28 U.S.C. § 3014(b)(2).  The judgment debtor bears the "burden of persuasion" that a claimed exemption applies, "[u]nless it is reasonably evident that the exemption applies."  28 U.S.C. § 3014(b)(2).

### B.  11 U.S.C. § 522(d)(5)

Asare claims an exemption under 11 U.S.C. § 522(d)(5), known as the "wild-card exemption."  Notice at 2; *see In re Banfi*, No. 19 Civ. 77029, 2021 WL 2407504, at *4 (Bankr. E.D.N.Y. June 9, 2021).  Under that provision, a debtor can claim an exemption of $1,475 plus up to $13,950 of any unused amount of the exemption provided for in 28 U.S.C. § 3205(c)(1) for a total of $15,425.  11 U.S.C. § 522(d)(5).  However, Asare failed to raise this exemption during the hearing or in his post-hearing briefing.  *See generally* Tr.; Judgment Debtors Mem.  Therefore, the Court shall presume Asare abandoned his claimed exemption under 11 U.S.C. § 522(d)(5) in favor of his claimed state exemptions.  *See* 28 U.S.C. § 3014(a).  Accordingly, Asare's claimed exemption pursuant to 11 U.S.C. § 522(d)(5) is DENIED.

### C.  N.Y. CPLR § 5205(d)(2)

Next, Asare claims an exemption pursuant to N.Y. CPLR § 5205(d)(2), which exempts 90% of the earnings of the judgment debtor for personal services rendered within sixty days before, and at any time after, the account is restrained.  N.Y. CPLR § 5205(d)(2).  This exemption is not applicable if "a court determines [the exemption] to be unnecessary for the reasonable requirements of the judgment debtor and his dependents."  N.Y. CPLR § 5205(d).  Therefore, if the Court finds that a judgment debtor can support himself and his dependents without the exemption, it does not need to permit the exemption.

Both parties agree that the relevant date for the purposes of the New York exemptions is December 30, 2021, the date of the original restraining notice.  *See* Judgment Debtor Mem. at 2; Gov. Mem. at 1–2.  Asare argues all of the money received in the Asare Accounts are earnings for purposes of the exemption.  Judgment Debtor Mem. at 6.  The Court disagrees.  On December 10, 2021, the Springfield Account transferred $250,000 to the Savings Account.  Tr. at 13; ECF Nos. 292-2–3.  Earlier that same day, "SBAD TREAS 310" deposited $257,000 into the Springfield Account.  Tr. at 22; Tr. Ex. B.  Asare testified that this money was a Small Business Administration (the "SBA") loan (the "SBA Loan").  *Id*.  He stated that the transfer to the Savings Account was his compensation for services rendered the prior year.  *Id.* at 11, 13, 15.  He testified that he did not deposit any of his paychecks because his business was struggling, therefore, he used the SBA Loan to cover the amount Springfield owed to him for his undeposited paychecks and year-end distributions of profits.  *Id.* at 16–17, 21–22, 24–25.  Therefore, the funds were to compensate Asare for services rendered for all of 2021 up until December 10, 2021, not just the sixty days before the restraint.  Out of the 343 days the funds covered, only forty of those days occurred within sixty days of the restraint.  Therefore, the earnings for personal services rendered within sixty days of the restraint was $29,154.52.  Asare has not provided any evidence that the remaining funds in the Asare Accounts are earnings from his personal services within sixty days before or any time after the restraint.  Therefore, Asare's maximum exemption pursuant to N.Y. CPLR § 5205(d)(2) is $26,239.07; ninety percent of Asare's earnings from personal services fall within the relevant time frame.

Having determined the appropriate earnings for the purposes of the exemption, the Court now must determine if the exemption is "unnecessary for the reasonable requirements of the judgment debtor and his dependents."  N.Y. CPLR § 5205(d).  Asare argues that he does not live a "lush or lavish life style [sic];" rather, he provides for his family and their education and invests

in a business he started.  Judgment Debtor Mem. at 7.  He further contends that the Government has not presented "any evidence" that would demonstrate that the exemption should be denied or reduced.  *Id.*  The Government argues that Asare earns enough to provide for the reasonable requirements of his family without the exemption.  Gov. Mem. 12–14.  The Court agrees with the Government.

As an initial matter, it is the judgment debtor's burden to show an exemption applies, not the Government's burden to show that it does not apply.  28 U.S.C. § 3014(b)(2).  Therefore, Asare has the burden to demonstrate that he is unable to meet the reasonable requirements of his family without the exemption.  He has failed to meet his burden.  Asare testified that his total monthly expenses are $20,700 for himself, his wife, and his daughters, who are all over twenty-one years old, and to help provide for family in Ghana.  Tr. at 28–30, 43–44.  This is well above what the Internal Revenue Services' (the "IRS") collection financial standards[3] (the "IRS Standard") set as the appropriate monthly expenses for those owing money to the IRS who reside in Suffolk County. Under the IRS Standard, the monthly expenses for himself, his wife, and the one daughter they still support would have been $7,493.50, excluding the $600 he gives to his two churches, and the $1,900 he gives to his family in Ghana.  Even considering his charitable giving, the total permissible expenses under the IRS Standard is still less than half of what Asare spends on expenses each month.

Asare's monthly income is approximately $25,000.[4]  Tr. at 30.  In addition, his wife earns approximately $5,000 a month for her work for Springfield.  Tr. at 32.  Therefore, each month, he and his wife have over $9,000 left over after expenses.  And, if his expenses were those under the

---

[3] *See* Collection Financial Standards, IRS, https://www.irs.gov/businesses/small-businesses-self-employed/collection-financial-standards (last accessed Oct. 11, 2022).

[4] He also has a retirement account worth around $11,000, Tr. at 35, and owns his house, which he estimates to be worth at least $1.3 million, and for which he pays a mortgage as part of his overall monthly expenses, Tr. at 28, 37.

IRS Standard, he would have over $20,000 left after expenses, even if he continued with his current charitable giving.

Further, in 2021, while the judgment was outstanding, he transferred over $415,000 from the Savings Account into accounts belonging to MB Group USA, MiraBurst ("MiraBurst"), a company he founded and for which he is the majority shareholder. Tr. at 30, 39. This is more than the balance on the judgment. *See* Childs Decl. ¶ 6; ECF No. 292-1. When looked at on a monthly basis, he transferred $34,583.33 per month into MiraBurst, which is more than the $26,239.07 of the possible exclusion. Further, during the sixty days before the restraint was placed on the Accounts, the period for which Asare provided any documentation as relates to this exemption, Asare transferred $150,000 to MiraBurst. Tr. at 37, 40; Tr. Ex. C. In 2022, after the restraining notice was in place on his accounts at TD Bank, he and his wife transferred an additional $116,000, to MiraBurst from other accounts he and his wife controlled. Tr. at 41.

The Court concludes that the exclusion of $26,239.07 is not necessary for the reasonable requirements of the judgment debtor and his dependents. He lives an extremely comfortable life and invests large sums of money into a company that is currently not generating a profit, Tr. at 30, all while failing to pay the judgment. In the period for which he has provided documentation with regard to this exemption, he invested more than five times the possible exemption into MiraBurst. This demonstrates that he can provide for his family without the exemption. *See In Re Porlnoy*, 201 B.R. 685, 693 (Bankr. S.D.N.Y. 1996) ("[T]he appropriate inquiry is the quantum necessary for the debtor's and his family's 'reasonable requirements' for support, keeping in mind that 'no man should be permitted to live at the same time in luxury and in debt.'" (citations omitted)). Accordingly, Asare's claimed exemption pursuant to N.Y. CPLR § 5205(d)(2) is DENIED.

D.  N.Y. CPLR § 5205(l)

Finally, Asare claims an exemption under N.Y. CPLR § 5205(l), which excludes $2,500 from accounts where "statutorily exempt payments" were deposited by direct deposit or electronic payment within the forty-five days before the initial restraining notice was sent to TD Bank.  N.Y. CPLR § 5205(l)(1).  Statutorily exempt payments "include, but are not limited to . . . social security, including retirement, survivors' and disability benefits, supplemental security income or child support payments; veterans administration benefits; public assistance; workers' compensation; unemployment insurance; public or private pensions; railroad retirement; black lung benefits; and emergency relief funds."  N.Y. CPLR § 5205(1)(2).

Asare did not raise this exemption in his post-hearing submission and has provided no proof that he is entitled to the exemption.  *See generally* Judgment Debtor Mem.  Even if the Court were to assume that the SBA Loan was a statutorily exempt payment under N.Y. CPLR § 5205(l)(1), Asare would still not be entitled to the exemption.  The SBA Loan was deposited into the Springfield Account, not one of the Asare Accounts.  Tr. 21–22.  Money from the Springfield Account was then transferred to the Savings Account, after it was comingled with the other funds in the Springfield Account.  *Id.* at 24.  Therefore, the SBA Loan was not deposited by "direct deposit or electronic payment[]" as required for the exemption pursuant to N.Y. CPLR § 5205(l)(1) to apply.  Accordingly, the Court DENIES the exemption pursuant to N.Y. CPLR § 5205(l)(1).

The Court DENIES Asare's claim of exemptions.  Accordingly, the Government's writ for garnishment is GRANTED as to the Asare Accounts.

II.   Springfield Account

At the hearing, Springfield contended that approximately a year before the judgment UCC-1 financing statements were filed against the Springfield Account.  Tr. at 4.  Springfield

added that those financing statements had expired, and that a new lender filed new UCC-1's. *Id.* at 4–5. It further argued that the entity with a valid UCC-1 was a senior creditor which prevents garnishment of the Springfield Account. *Id.* at 4, 6. In the briefing on the issue of the possible senior lien ordered by the Court, Tr. at 6, Springfield discusses the impact of the lien created by the SBA Loan. Judgment Debtors Mem. at 4–5. Therefore, the lien associated with the SBA Loan is the only lien the Court shall consider with regard to the Springfield Account.

In its memorandum, Springfield argues that the SBA Loan and related UCC-1 created a prior perfected security interest in the Springfield Account, which would prevent garnishment of the funds in the Springfield Account. Judgment Debtors Mem. at 4–5. The Government contends that the security interest created by the SBA Loan was never perfected because the SBA never had control of the Springfield Account, a requirement for a security interest in a deposit account to be perfected. Gov. Mem. at 8–9. The Court agrees with the Government.

For a security interest to be perfected in a deposit account such as the Springfield Account, there must be control over the account. N.Y. UCC § 9-312(b)(1); N.Y. UCC § 9-314(a). Perfection is only achieved when there is control over the account, and when the control lapses, so does the perfection. N.Y. UCC § 9-314(b). A party has control over a deposit account if: "(1) the secured party is the bank with which the deposit account is maintained; (2) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or (3) the secured party becomes the bank's customer with respect to the deposit account." N.Y. UCC § 9-104. The SBA is not the bank, and Springfield has not provided any proof that there was an agreement between it, the SBA, and TD Bank, nor has it shown that the SBA was the bank's customer as to the Springfield Account. Further, the Government has stated that it served the SBA with a subpoena related to this matter, and SBA did

not produce an agreement pursuant to N.Y. UCC § 9-104. *See* Gov. Mem. at 8 n.8. There is no evidence the SBA has control over the Springfield Account such that its security interest was perfected. Therefore, the SBA lien does not preclude garnishment. *Cf. Walmart Stores, Inc. v. First Am. Corp.*, 11 Civ. 7185, 2012 WL 3957184, at *7 (S.D.N.Y. Aug. 31, 2012) (denying garnishment because the security interest had perfected). Accordingly, the Government's motion for garnishment as to the Springfield Account is GRANTED.

III.    <u>Additional Requests by the Government</u>

The Government requests that the Court impose a surcharge of ten percent of the debt's balance pursuant to 28 U.S.C. § 3011 because the Government was forced to resort to litigation to recover the judgment. Gov. Mem. at 14–15. The Court shall impose a surcharge of ten percent pursuant to 28 U.S.C. § 3011. *See Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 169 F.3d 110, 113–14 (2d Cir. 1999).

The Government also requests that the Court order the Judgment Debtors to begin making monthly payments in the amount of at least $7,000. Gov. Mem. at 14 & n.15. Judgment Debtors did not file a reply brief contesting this request, nor have they requested a hearing on the issue of an installment payment. However, the Government has not stated that it has served a notice of the memorandum containing its motion for an installment payment order on Judgment Debtors "in the same manner as a summons or by registered or certified mail, return receipt requested" as required by 28 U.S.C. § 3204(a). Accordingly, the Government's motion is DENIED without prejudice to renewal. Should the Government renew its motion, it shall serve a notice upon Judgment Debtors consistent with 28 U.S.C. § 3204(a). It shall also provide the Court with a proposed order. Finally, it shall brief: (1) whether Asare's income from Springfield is "earnings from self employment" pursuant to 28 U.S.C. § 3204(a)(1) or if Asare "is diverting or concealing substantial earnings from

any source, or property received in lieu of earnings" pursuant to 28 U.S.C. § 3204(a)(2), and (2)

the applicability of 28 U.S.C. § 3204 to corporations such as Springfield.

## CONCLUSION

The Government's motion for garnishment is GRANTED, and Asare's request for

exemptions is DENIED.  Further, the Government's request for the imposition of a ten percent

surcharge of the balance of the debt owed is GRANTED.  The Government's request for an

installment payment order is DENIED without prejudice to renewal.

SO ORDERED.

Dated: October 11, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge